**KANSAS CITY SOUTHERN RAILWAY COMPANY, Plaintiff in Error,**

v.

**Bryan GIRDNER, Defendant in Error.**

**Nos. 41075, 41076.**

Supreme Court of Oklahoma.

May 10, 1966.

As Corrected June 8, 1966.

Rehearing Denied Dec. 13, 1966.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiff in error.

Lloyd E. Cole, Jr., Stilwell, for defendant in error.

PER CURIAM:

These are appeals in two companion cases by Kansas City Southern Railway Company from adverse judgments in favor of Bryan Girdner allowing damages for loss of livestock on the railroad's right of way. The parties will be referred to by their trial court designations.

Case 41075 in this Court arose out of case No. 7845 in the trial court and in it plaintiff sought damages for the loss of certain cattle, hogs, and horses. Case No. 41076 in this Court arose out of case No. 8024 in the trial court and in it plaintiff sought damages for loss of certain cattle and hogs.

The cases were consolidated for trial. A jury awarded separate verdicts in favor of plaintiff in each case. Likewise the appeals were consolidated for briefing in this Court.

The defendant appeals to this Court upon two propositions, as follows:

(1) The trial court erred in permitting evidence of damages by reason of hogs being killed on the tracks of plaintiff in error; (2) The trial court erred in failing to sustain the demurrer of plaintiff in error to the evidence for the reason that defendant in error failed to show that plaintiff in error had notice of the hog fencing.

Defendant relies upon the following statutes:

66 O.S.1961, Sec. 145: "Whenever the owner or occupant of any tract of land abutting on any line of railroad within this State shall desire to enclose such tract of land for the purpose of making a hog, sheep or goat pasture, and shall construct a fence for said purpose about said tract of land on all sides except along the side abutting on such railroad, it shall be the duty of such railroad company to construct a good and sufficient fence not less than four and one-half feet high, one barbed wire at bottom of such fence immediately above which shall be attached heavy woven wire not less than twenty-eight inches high, and sufficient for the purpose of restraining swine, sheep and goats, with three barbed wires above the same, on the side of such tract, so far as the same extends along the line of such railroad, and maintain the same in good condition, so long as such owner or occupant of such tract may desire to maintain such pasture."

66 O.S.1961, Sec. 146: "Whenever the owner or occupant of any tract of land desires to construct a fence as provided in the preceding section, he shall give written notice of his intention to the railroad company upon whose line such tract is situated, by personal service upon the agent of said company at the station within this State, nearest to such tract of land, giving in said notice a description of said land, and it shall be the duty of the railroad company to construct and complete its portion of such fence within 60 days after the service of such notice: Provided, that if such owner or occupant fails to construct his portion of such fence, then the railroad company shall not be required to construct such fence,"

as interpreted by this Court in McCook v. Bryan, 4 Okl. 488, 46 P. 506, and St. Louis & San Francisco Railway Co. v. Higgs, 42 Okl. 171, 141 P. 10.

Plaintiff contends that the above decisions do not apply in the instant cases and says that he comes within the decision of Choctaw, Oklahoma & Gulf Railroad Co. v. Deperade, 12 Okl. 367, 71 P. 629.

These appeals may be resolved upon the basis of whether the rule of McCook v. Bryan, supra, controls.

The parties stipulated that the portions of the railroad right of way in which the animals respectively were killed, as well as plaintiff's farm, were in an area known as "open range" or a place in which hogs, cattle and horses were not prohibited from running at large.

There was evidence sufficient for the jury to conclude that a portion of plaintiff's lands was enclosed by a hog wire fence and that a hog wire fence separated his lands from the railroad right of way, but that the latter fence had been, in many places, permitted to deteriorate so that it would no longer restrain hogs, cattle or horses. The fence along the railroad right of way had been there as long as various witnesses remembered. Plaintiff had built his hog fences in 1948. The animals for which recovery was sought were allegedly killed between March 3, 1961, and August 2, 1963. The railroad company had worked on the fences adjoining its right of way.

It was neither pleaded nor proven by plaintiff that he had given the notice referred to in 66 O.S.1961, § 146.

■ In McCook v. Bryan, supra, it was pointed out that at common law a railroad is entitled to exclusive possession of its road and right of way, free from intrusion or trespass and is under no obligation to fence or keep safe the property of adjoining proprietors; that Section 1047 of Statutes of Oklahoma 1893 (these referred to pasturage in general rather than for hogs,) modified the common law for the benefit of the owner of a tract abutting the railroad who gave the notice required by such statute; that unless such statute was complied with, such abutting owner could not recover damages, and that he must have pleaded and proven compliance with the statute in order to recover. This opinion held for the railroad.

Chronologically, the next decision among those cited by the parties was that of Choctaw, O. & G. R. Co. v. Deperade, which opinion was rendered in 1903. Deperade did not plead or prove the giving of the notice required by the statute. The Court distinguished this set of facts from those in the McCook case, supra, saying in part:

" * * * That case, however, is hardly applicable here, as in that case there was no construction of a fence by either the owner of the land or the railroad company, and, of course, the question of building the fence, as well as the notice, are prerequisites to the right of recovery. * * * The sections of the statute requiring a railroad company to build fences contemplate cases where the railroad runs through or upon vacant land, and the abutting owner of the land desires to inclose such tract for pasturage or other purposes, * * *. But this is in cases where the owner has inclosed vacant land. In the case at bar the record shows that when the railroad company built its line of road through this land the same was fenced, and the railroad company, whether with or without notice, proceeded to construct just such a fence as the law requires to be constructed upon notice. * * * If the company has received notice otherwise, and proceeds to comply with the statute, the statutory notice will be deemed to have been waived."

The next opinion, chronologically in order of decision, cited in the briefs herein in St. Louis & S. F. R. Co. v. Higgs, supra, decided in 1914. It was presumed in the opinion that the herd law had never been suspended and that, therefore, McCurtain County, in which Higgs allegedly lost his hogs, was closed range. Apparently, Higgs' hogs were not confined to a pasture by Higgs and it is not stated in the opinion that he was an adjoining landowner. However, if the facts in the Higgs case were similar to those in the instant case, the opinion in such former case did not consider the Deperade opinion, supra, as it modified the rule expressed in the McCook case, supra. The Deperade opinion, supra, is not referred to in the Higgs opinion, supra, and we do not regard the latter as affecting the modification by the former of the rule expressed in McCook, supra.

We do not regard Schaff v. Tinkle, 96 Okl. 204, 221 P. 17 (decided 1923) to be clearly in point, except for certain dicta therein because in the latter case the hogs were not alleged to have entered the railroad premises through the right of way fence, but they got out of plaintiff's pasture

onto a road and entered the right of way across a cattle guard. Plaintiff's theory was that the railroad was required to maintain a hog proof cattle guard. The Court held that there was no law requiring the railroad to build hog proof cattle guards at highway crossings. However, in the latter case the Court did say in part:

"Where the owner has built such a fence along the right of way of a railroad company, such company may, by assent, or acquiescence, adopt it, and in the absence of any agreement it will be the duty of the railroad company to maintain it in good condition and restore it if removed by the owner. * * *"

The latter quotation indicates approval, and even an enlargement, of the Deperade modification of the rule first announced in McCook.

In the instant cases, there was a hog-proof fence along the railroad right of way, the maintenance of which was undertaken by the defendant railroad. As an example of the testimony with reference to the company knowing the hog fence was there and as to whether it attempted to maintain it, Mr. Girdner testified he built a fence on three sides of a ninety acre strip; it had hog-wire all the way around it; that he asked the railroad people different times to fix their fence; that he had had previous experiences in court with them; that they knew the condition of the fence because he had previously had to prove it (in court hearings).

The section foreman of the company testified that the hog-wire fence was not down all along; "it was just little holes where the hogs had went through. * * *" "Yah. We worked on the fence and we've worked a lot on it the last year or two. You see, this fence don't stay down because Mr. Girdner's told me a time or two it was down and we always went and fixed it."

There was sufficient evidence for the jury to conclude that the damage com-

plained of was caused by the failure of this fence to serve its proper purposes and that the railroad had adopted the construction of this fence by assent and acquiescence and that its failure to maintain it in good condition makes it liable in these cases. See our opinion in the case of Kansas City Southern Ry. Co. v. English, Okl., 417 P.2d 309.

The judgments are affirmed.

The Court acknowledges the services of Joe Stamper, who with the aid and counsel of Meredith E. Hardgrave and Donald R. Hackler, as Special Masters, prepared a preliminary advisory opinion. The attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to WILLIAMS, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.

HALLEY, C. J., JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.

DAVISON, J., concurs specially.

DAVISON, Justice (concurring specially).

I concur in the majority opinion for the reason the evidence was conclusive that the plaintiff in error had for some years prior to the accrual of the cause of action herein maintained the hog wire fence through its section foreman and therefore waived any defense it might have had under Sections 145 and 146, Title 66 O.S.1961.

The writer wrote a dissenting opinion in the case of Kansas City Southern Ry. Co. v. English, Okl., 417 P.2d 309. The factual situations in that case are distinguishable from the facts in the present case in that in the cited case the evidence did not disclose that the Railroad Company had been maintaining the fence before the time the accident happened.